Hearing Date: June 18, 2018
Hearing Time: 3:00 p.m. EST

J. Alexandra Rhim (Admitted *Pro Hac Vice*)
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
E-mail: arhim@hrhlaw.com

Attorneys for Secured Creditor BANK OF HOPE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| 461 7TH AVENUE MARKET, INC., | Case No. 18-22671-rdd |
| Debtor. | |

**SECURED CREDITOR BANK OF HOPE'S OPPOSITION TO MOTION FOR AN ORDER APPROVING INTERIM AND FINAL USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105(A), 361, 363, AND 364(C) OF THE BANKRUPTCY CODE**

Secured creditor Bank of Hope as successor in interest to Nara Bank ("Bank") submits this Opposition to the Motion for an Order Approving Interim and Final Use of Cash Collateral Pursuant to Sections 105(A), 361, 363, and 364(c) of the Bankruptcy Code ("Motion") filed by debtor 461 7th Avenue Market, Inc. ("Debtor").

## I.    INTRODUCTION

Despite admittedly operating at a deficit, the Debtor has been using the Bank's cash collateral to operate its business, which consists of a deli and grocery mart, since the May 3, 2018, bankruptcy petition date ("Petition Date"), without the Bank's consent or Court authorization. In recent weeks, the Bank and the Debtor, through counsel, negotiated regarding a Stipulation for Interim Use of Cash Collateral and Adequate Protection ("Cash Collateral Stipulation"). On June 12, with just one remaining point of contention regarding the Cash Collateral Stipulation, the Debtor proceeded to file the Motion.

The Motion is devoid of any evidentiary support or a showing that the Bank will be adequately protected and should be denied on that basis alone. If the Court considers the Motion

1

on its merits, the Court should decline to approve the Motion insofar as the Debtor seeks (1) to subordinate the Bank's Adequate Protection Lien and Adequate Protection Superpriority Claims to Professional Fees (each term, as defined in the Proposed Order on the Motion) or chapter 7 administrative expenses; or (2) to use cash collateral following entry of an order granting the Debtor's landlord relief from the automatic stay to proceed with eviction proceedings. The Court should also require the Debtor to provide additional information regarding the proposed budget; should authorize interim use of cash collateral, if at all, only for a short period of time; and should set a further hearing on the Motion after the Debtor's first monthly operating report is due, to permit the Court and the Bank to review the Debtor's initial post-petition financial performance.

## II.    RELEVANT FACTS

**A.    The Bank's Claim and this Bankruptcy Case**

The Bank holds a perfected first-priority blanket security interest in the Debtor's assets, securing repayment of a loan to the Debtor with a balance not less than $231,578.30 on the Petition Date. [Schedule D (Dkt. No. 1, p. 16 of 36); Motion at ¶¶ 4-10.] According to the Debtor, the value of the collateral supporting the Bank's claim is only $53,302. [Schedule D (Dkt. No. 1, p. 16 of 36).] The Debtor filed this case "due to a pending eviction by [its] landlord" [Dkt. No. 1, p. 9 of 36] and, through special counsel employed pursuant to 11 U.S.C. § 327(e), has filed an adversary proceeding against its landlord asserting various claims. [Dkt. Nos. 13 and 15.]

**B.    The Proposed Cash Collateral Stipulation and Cash Collateral Budgets**

In recent weeks, the Bank and the Debtor, through counsel, negotiated regarding a Cash Collateral Stipulation. On May 21, the Debtor sent the Bank a proposed budget for the period from May 6 to June 5 projecting: (1) $437,562 in sales; (2) $68,525 in legal fees; (3) $123,992 in "Salary and Related Tax;" and (4) a $93,595 operating deficit to be funded by a shareholder loan. [Declaration of Christopher D. Crowell filed herewith ¶ 2, Ex. 1.]

Shortly thereafter, the Debtor sent the Bank a revised budget for the same period (which is the budget filed with the Motion) eliminating the line item for legal fees; showing modestly higher sales and modestly lower material cost (i.e., cost of goods sold) and operating expenses; and

projecting a $340 cash surplus at the end of the period. [Id. ¶ 3.] Note 9 to this budget references a "co-relationship" without any further explanation as to what that means. [Id.]

On June 12, the Debtor sent the Bank further revisions to the Cash Collateral Stipulation. [Id. ¶ 4, Ex. 2.] After the parties were unable to reach a definitive agreement on these revisions that day, the Debtor proceeded to file the Motion. [Id.] The only remaining point of contention between the Debtor and the Bank regarding the Cash Collateral Stipulation is the Debtor's refusal to concede that the Bank's consent to use of cash collateral will terminate if the Debtor's landlord is granted relief from the automatic stay to proceed with an eviction. [Id.]

On June 14, the Debtor filed a revised cash collateral budget for the month ending June 30, 2018. [Dkt. No. 27.] This budget projects: (1) $413,472 in sales ($31,934 lower than the sales projected in the budget filed with the Motion, to account for a seasonal revenue decrease); (2) $11,000 in professional fees (based on an "estimated fee quotation from accounting and law firm[1]"); (3) $125,804 in "Salary and Related Tax;" and (4) a $2,061 cash surplus. [Id.]

### III.   ARGUMENT

**A.   The Court Should Deny the Motion Because It Has No Evidentiary Support**

11 U.S.C. § 363(c)(2) provides that the trustee (or, by virtue of 11 U.S.C. § 1107(a), the chapter 11 debtor in possession) may not use cash collateral absent consent of each entity that has an interest in such cash collateral or Court authorization granted after notice and a hearing. On request of an entity that has an interest in cash collateral, the Court must "prohibit or condition [its] use ... as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The trustee or debtor in possession "has the burden of proof on the issue of adequate protection." 11 U.S.C. § 363(p)(1).

The Court should deny the Motion because the Debtor has failed to meet its burden under § 363(p)(1). Conspicuously absent from the moving papers is a declaration (from the Debtor's

---

[1] The Motion does not specify whether this line item includes fees for the Debtor's special counsel. *Cf.* L.B.R. 4001-2(d) (debtor in possession must state whether it believes budget "will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the ... budget.")

3

principal or any other person with personal knowledge of the Debtor's business operations) submitted under penalty of perjury to authenticate and account for the various items in the proposed budget or provide support for any of the other statements of purported fact in the Motion. The statements of the Debtor's attorney in the Motion are not evidence. See Raucci v. Town of Rotterdam, 902 F.2d 1050, 1059 (2nd Cir. 1990).

**B.    Alternatively, the Court Should Decline to Approve the Carve Out and Should Require the Debtor to Seek Further Cash Collateral Authorization if the Landlord Obtains Stay Relief**

If the Court considers the Motion on its merits, the Court should decline to approve the Motion insofar as the Debtor seeks to subordinate the Bank's Adequate Protection Liens and Adequate Protection Superpriority Claims to Professional Fees or chapter 7 administrative expenses. [See Proposed Order (Dkt. No. 24-11) ¶¶ 3-4 (making Adequate Protection Liens "[s]ubject to a Carve Out"; ¶¶ 6-7 (same with respect to Adequate Protection Superpriority Claims); and ¶ 13 (defining the "Carve Out").]

"There is no provision in the Bankruptcy Code or Rules for a Bankruptcy Court to require that there be a carve-out for professionals ... in Chapter 11 cases where a prepetition secured creditor has liens on all of the debtor's property, so that there are no free and clear assets available for the payment of administrative expenses. As a result, this Court has never required a secured creditor to grant such a carve-out ... leaving that to the interested parties." In re Labelon Corp., 2006 WL 753205 at *4 (Bankr. W.D.N.Y. Mar. 24, 2006).

The proposed Carve Out is especially unwarranted in this case because (according to the Debtor's Schedules) the Bank's claim is substantially undersecured and because the Debtor's business prospects are dependent on the resolution of the Debtor's dispute with its landlord. If the Debtor is evicted from its sole business premises, the Debtor presumably will not be able to continue as a going concern. Separate and apart from the Debtor's issues with its landlord, the various budgets submitted to the Bank reflect that the Debtor is, at best, operating on a break-even basis.

The Bank should not be required to finance the Debtor's speculative gamble that it will prevail vis-à-vis its landlord. The administrative expenses of this chapter 11 case (or any converted chapter 7 case) should instead be borne by the Debtor's principal, who stands to benefit the most from a successful outcome.

Because the success of this chapter 11 case turns on the resolution of the Debtor's dispute with its landlord, any order authorizing the Debtor to use cash collateral should provide that such authorization ceases upon entry of an order granting the landlord relief from the automatic stay to proceed with eviction proceedings. The Debtor of course would be free to seek further cash collateral authorization in such event, on a showing that the Bank's interests are adequately protected.

**C.    The Court Should Require the Debtor to Provide Additional Information Regarding the Proposed Budget and Authorize Cash Collateral Use, If At All, Only for a Short Period of Time, Pending a Further Hearing**

The Motion is remarkably thin on detail regarding the Debtor's business operations and the proposed budget. Of particular concern to the Bank is the $125,804 line item for monthly "Salary and Related Tax," which seems quite high given the nature of the Debtor's business. How many employees does the Debtor have? Is the Debtor's principal taking a salary from the Debtor? If so, how much and how much in relation to the Debtor's pre-petition salary? What is the "co-relationship" referred to in the original budget filed with the Motion?

In light of these and other open questions, the Court should authorize interim use of cash collateral, at all, only for a short period of time; and should set a further hearing on the Motion after the Debtor's first monthly operating report is due, to permit the Court and the Bank to review the Debtor's post-petition financial performance.

///

///

///

///

## IV. CONCLUSION

For the foregoing reasons, the Bank respectfully requests that the Court authorize the Debtor to use cash collateral, if at all, only on the terms set forth in this Opposition.

DATED: June 15, 2018         HEMAR, ROUSSO & HEALD, LLP
                             Attorneys for BANK OF HOPE as successor-in-interest to NARA BANK

                             /s/ J. Alexandra Rhim
                             J. ALEXANDRA RHIM